# IN THE COURT OF APPEALS OF IOWA

No. 19-1184
Filed June 3, 2020

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**EDDIE DELONG,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cherokee County, Nancy L. Whittenburg, Judge.

An offender appeals the award of restitution. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**TABOR, Presiding Judge.**

Eddie DeLong appeals the restitution order imposed after his convictions for third-degree sexual abuse as a habitual offender and providing alcohol to a minor. He contends the district court mistakenly found he had the reasonable ability to pay $10,136.45 in restitution under Iowa Code section 910.2(1) (2019). Because the record supports his ability to pay those amounts without undue hardship, we affirm.

## I.    Prior Proceedings

This is DeLong's third time before our court. In his first appeal, we affirmed his convictions but reversed the sentences based on a deficiency in his habitual-offender stipulation. *See State v. DeLong*, No. 18-0588, 2019 WL 2144638, at *4–5 (Iowa Ct. App. May 15, 2019). After resentencing, DeLong challenged the causal connection between the offenses and the $2740.95 in restitution ordered for the crime victim compensation program (CVCP). *See State v. DeLong*, No. 18-1763, 2019 WL 5792670, at *1 (Iowa Ct. App. Nov. 6, 2019). We found substantial support for the restitution order and affirmed. *Id.* at *2. But the supreme court vacated our decision and remanded the case to the district court to enter restitution for the CVCP in the reduced amount of $285.50. *See State v. DeLong*, \_\_\_\_ N.W.2d \_\_\_\_, \_\_\_\_, 2020 WL 2600966, at *7\_(Iowa 2020).

In this new appeal, DeLong contends the sentencing court failed to determine his ability to pay restitution amounts "without hardship" under *State v. Albright*, 925 N.W.2d 144, 161 (Iowa 2019) (explaining section 910.2(1) sets out two categories of restitution, the second category being subject to a reasonable-ability-to-pay analysis). The sentencing court considered reimbursement claims

from the CVCP for $2740.95 and for court-appointed attorney fees in the amount of $7395.50—both category-two restitution items.[1] The court found DeLong had the reasonable ability to pay $11,242.35 in restitution and entered judgment.[2] After the supreme court's remand in *DeLong*, ___ N.W.2d at ___, 2020 WL 2600966, at *7, the total amount will now be $7681.

DeLong argues the district court failed to consider his limited financial resources—particularly that he is indigent and incarcerated without income. He also complains the court did not factor in his future financial obligations.

## II.     Scope and Standards of Review

Generally, we review restitution orders for correction of legal error. *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004). That review involves determining whether the district court has properly applied the law or whether substantial evidence supports its findings. *See Albright*, 925 N.W.2d at 158. But our supreme court has applied an abuse-of-discretion standard to review a district court's reasonable-ability-to-pay determination. *See State v. Kaelin*, 362 N.W.2d 526, 528 (Iowa 1985) ("[A] defendant who seeks to upset an order for restitution for [court costs and attorney fees] 'has the burden to demonstrate a failure of the trial court to exercise discretion or abuse of discretion.'" (citation omitted)); *see also State v. Van Hoff*, 415 N.W.2d 647, 649 (Iowa 1987) (holding refusal to reduce restitution amount was not an abuse of discretion).

---

[1] The district court declined to order DeLong to pay correctional fees under Iowa Code section 356.7.

[2] DeLong only contests his ability to pay the amount ordered for the CVCP and court-appointed counsel claims. He does not challenge the remaining $1105.90 in costs assessed, which included a court reporter fee of $320, service and transportation costs of $235.90, and court costs of $550.

### III.    Analysis

A sentencing court may order restitution for the CVCP and court-appointed attorney fees only if the offender is reasonably able to make those reimbursements.  *See* Iowa Code § 910.2(1).  The reasonable ability to pay means the offender has the wherewithal to assume that obligation without undue financial hardship.  *See Albright*, 925 N.W.2d at 161.  In fleshing out that hardship standard, the *Albright* court collected cases from other jurisdictions and endorsed factors considered by those courts.  *Id.* at 161–62.  For example, our supreme court embraced this Massachusetts holding:

> [T]he judge must consider the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents.

*Id.* at 161 (citing *Commonwealth v. Henry*, 55 N.E.3d 943, 953–54 (Mass. 2016)). *Albright* also borrowed from the Florida criminal code, "in determining ability to pay, the court must consider the financial resources of the defendant, the present and potential future financial needs and earning ability of the defendant and his or her dependents, and other factors as the court deems appropriate."  *Id.* at 162 (citing favorably Fla. Stat. Ann. § 775.089(6)).

With those factors in mind, we assess DeLong's argument that the sentencing court "failed to adequately take into account [his] financial resources, including his ability to meet his basic needs and those of any dependents, as is required by *Albright*."  Without doubt, those requirements were at the forefront of the sentencing court's thinking.  In opening the hearing, the court acknowledged that

for everyone involved, this is a new and developing area of the law. And every person involved in the court system is working diligently to understand how to implement these new requirements under the *Albright* decision to fairly determine a defendant's reasonable ability to pay and to do it in a proper way.

After the court's acknowledgment, defense counsel mentioned DeLong's indigency, his lack of income, and his poor job prospects considering the habitual-offender and sex-offender enhancements. The presentence-investigation report (PSI) listed DeLong's income sources, assets, and debts.[3] DeLong told the PSI investigator he owned his own company, Leak Proof Exteriors, since 2007. His annual take-home income from the business was as high as $40,000. He had assets related to his work valued at more than $30,000. He also had a home mortgage and vehicle loan. The PSI also conveyed DeLong had a teenaged daughter but she was in her mother's custody. When the court afforded DeLong his right to allocution, he did not discuss his finances or his ability to pay restitution.

After listening to the parties' arguments, the court explained its reasonable-ability-to-pay determination. The court started by noting DeLong was forty-five years old and had been incarcerated for nearly two years, meaning "he has the prospect of being released from custody at still a relatively early age, in the scheme of one entire life span, that will afford him an opportunity over time to pay the amounts that are being taxed against him by the court." The court also emphasized he had "no known disabilities physically or mentally . . . that would prevent him from being employed."

---

[3] At the resentencing, the court asked DeLong if he had any objection to the court not requesting a new, up-to-date PSI. The existing PSI is from roughly eighteen months before the resentencing hearing. DeLong's counsel did not object.

The court identified "the biggest barriers" to DeLong's future employment as his felony conviction and "special" sentence. Because of those barriers, the court "elected not to charge [him] with the correctional fees that the county asked for." On the other hand, the court found that DeLong could make payment "over time" on the CVCP reimbursement and the court-appointed attorney fees. The court noted no fines and only one surcharge was taxed against him. The court specifically stated it was considering the "hardships" DeLong faced upon release from prison. "The court has taken that into consideration and reduced partially the amounts that you shall pay in this matter."

In the written order memorializing the on-the-record sentencing, the court stated that it considered these factors:

> the nature or length of the sentence imposed; the defendant's application for court-appointed counsel, including the financial resources of the defendant including income and assets; the fines, surcharges, penalties, and victim restitution already assessed; the defendant's earning capacity; the defendant's dependents; the defendant's basic human needs; the hardship to the defendant or defendant's family; and any other factor relevant to this determination. The court considers the defendant's present and future ability to pay over the life of the obligation and a determination not based merely on chance. Further, the court has considered education, marketable job skills, potential and proven business skills, value of existing assets as well as the defendant's ingenuity and capabilities as well as any other information provided by the parties.

The court then ordered DeLong to reimburse the CVCP and repay his court-appointed attorney fees.

Contrary to DeLong's contention, the district court appropriately weighed the factors highlighted in *Albright*. The court's on-the-record statement and further notations in the written sentencing order provide a sound basis for its restitution decision. The court considered DeLong's age, the short timeline of his release

from prison, and the suspension of his other fines. While DeLong had been found indigent, that alone does not require reversal of the restitution order. *See State v. Richmond*, No. 18-0046, 2018 WL 4361031, at *3 (Iowa Ct. App. Sept. 12, 2018) (citing *Kaelin*, 362 N.W.2d at 528). The PSI showed DeLong had assets and reported steady income before his incarceration. And DeLong reported having no dependents to support. As for future financial obligations, the PSI contained a record of DeLong's debts in the form of a mortgage and car loans.

And DeLong produced no evidence payment of the restitution would cause him undue hardship.[4] He did not assert any future debt obligations, disability, or inability to earn income beyond the consequences of his convictions. The court recognized those barriers and reduced DeLong's restitution in response. Thus, DeLong's complaint the court failed to consider his future financial obligations is unfounded. After reviewing its reasoning, we find the sentencing court followed *Albright* in determining DeLong's reasonable ability to pay these restitution amounts. We decline to disturb the restitution order.

**AFFIRMED.**

---

[4] Granted, the parties did not have the benefit of the supreme court's decision in *DeLong*, ___ N.W.2d at ___, 2020 WL 2600966, at *7, when briefing this reasonable-ability-to-pay issue. Yet the supreme court's reduction of the amount of restitution owed would create an even higher bar for DeLong to show repayment would pose a hardship for him.